## No. 16,065.

### THURMAN ET AL. *v.* THE PEOPLE.
(208 P. [2d] 927)

Decided May 9, 1949.   Rehearing denied July 15, 1949.

Mr. V. G. SEAVY, for plaintiffs in error.

Mr. H. LAWRENCE HINKLEY, Attorney General, Mr. DUKE W. DUNBAR, Deputy, Mr. JAMES S. HENDERSON, Assistant, for the people.

*En Banc.*

MR. JUSTICE ALTER delivered the opinion of the court.

HAROLD THURMAN and Lee Ashby were found guilty of the larceny of livestock, as that crime is defined in section 93, chapter 48, '35 C.S.A., and were sentenced to terms of imprisonment in the penitentiary. To have reviewed the sentence and judgment, they have sued out a writ of error.

The information, filed in the district court of Pueblo county, contained two counts, the first of which charged that defendants "on or about the 5th day of July, A. D. 1947, within the County of Pueblo, State of Colorado, did then and there unlawfully and feloniously steal, embezzle, sell, drive, lead and carry away" five head of cattle, some of which were, and some of which were not, branded "then and there the property of one R. N. Wade, and thereby did then and there wilfully, unlawfully and feloniously deprive the said R. N. Wade of the immediate possession" of said five head of cattle. The second count of the information charged defendants with a conspiracy to commit the crime set forth in the first count, but this count was withdrawn from the jury's consideration; consequently no further consideration will be given it.

The evidence discloses that Thurman was engaged in business in the city of Pueblo and also operated a cattle ranch in Pueblo county, on which ranch defendant Ashby was foreman. R. N. Wade lived in Pueblo and owned some cattle which were pastured on the ranch of one Donley who operated a cattle ranch in the general neighborhood of the one owned by Thurman. It appears from the evidence that the fences in the general neighborhood of the Thurman and Donley ranches were not in good condition; that cattle in the general neighborhood of the Thurman and Donley ranches strayed from one ranch to others; also that some of R. N. Wade's cattle were unbranded and some branded on the left hind quarter with a brand designated as R slash bar, and that those of Thurman's cattle which were branded bore a brand designated as H lazy T quarter circle. The brands of both Wade and Thurman were recorded in the office of the State Board of Stock Inspection Commissioners. Wade also earmarked some, if not all, of his cattle with a slit in the right ear. The cattle, the larceny of which was charged, were three cows, two of which were branded and one unbranded, and two calves unbranded at the time the crime allegedly was committed.

The exhibits and evidence in connection therewith clearly disclose that one of the cows branded R slash bar had with it a calf, and that under Wade's brand on the cow appeared the brand H lazy T quarter circle, and that the calf also was branded H lazy T quarter circle. Another cow bore Wade's brand, and the calf at its side was branded H lazy T quarter circle. The unbranded cow had a slit in its right ear, and what appeared to be a recent brand of H lazy T quarter circle on its right hip. According to the testimony of Wade and other witnesses, these five head of cattle, branded as indicated, were the five head mentioned in the first count of the information and were the property of R. N. Wade.

It appears from the evidence that cattle other than those involved in this information had "drifted" during a rather severe storm in the fall of the year 1946, and that others than those belonging to Wade were found in Thurman's pasture. It further appears that when some of the ranchers in the neighborhood of the Thurman ranch were searching for their cattle, Ashby directed them to make whatever search they desired on the Thurman ranch for their cattle. The evidence also disclosed that at one time some of Thurman's cattle were out of his pasture and over on the ranch of an adjoining owner and that one of Thurman's employees drove cattle belonging to others than Thurman to the Thurman place in order to return the latter's cattle to their proper pasture.

Neither defendant took the witness stand, but Ashby, in answer to questions by the officers at or about the time of the filing of the information, stated that Thurman had bills of sale for all of the cattle involved in this prosecution, and that he assisted Thurman in branding these cattle. It further appears from the people's evidence that Thurman asserted that he had bills of sale for all of the cattle, the larceny of which is alleged, and had furnished the brand inspector with bills of sales; which, however, the latter testified did not cover the cattle described in the information.

So far as the evidence discloses, no attempt was ever made by Thurman or Ashby to conceal the cattle here involved or to prevent their discovery or recovery; the branding was done in the daytime, in the open, at a corral not far distant from the road, and apparently, from the record, cattlemen in search of strays went in, about and out of the Thurman premises without interference of any kind.

There are twenty-five assignments of error (improperly designated as "specification of points"), but we shall discuss only one, which challenges the sufficiency of the evidence to sustain the charge set out in the information.

The pertinent part of the statute under which this information was drawn reads: "Any person who shall steal, embezzle or unlawfully kill, sell, drive, lead or ride away, or in any manner unlawfully deprive the owner of the immediate possession of any neat cattle, * * * shall be deemed guilty of larceny, and on conviction thereof in any court of competent jurisdiction, shall be punished by imprisonment in the penitentiary for a period of not less than one year nor more than ten years, or by a fine of not less than two hundred dollars nor more than five thousand dollars, or by both such fine and imprisonment, at the discretion of the court." §93, c. 48, '35 C.S.A.

There is no competent, material or relevant evidence, direct or circumstantial, to establish that defendants, or either of them, stole or embezzled the cattle described in the information; neither is there such evidence that they, or either of them, killed, sold, led or rode away any cattle described in the information. If defendant Thurman's employee, acting under the orders of his foreman, drove the cattle described in the information, or some of them, onto the ranch property of Thurman in order to return some of Thurman's cattle to his ranch, as was testified herein, this of itself was not such driving as was contemplated by the statute. In view of the fact that the cattle here in question were admittedly branded by defendants in a corral near the roadway and in broad day-

light; that there was no attempt on the part of the defendants, or either of them, to conceal or hide the cattle; that they were found in an open pasture with other cattle belonging to Thurman; that when the cattle mentioned in the information were recovered, it was done without asking leave or license of any one to go upon the Thurman premises to recover them, and their recovery was obtained without knowledge of either defendant; that when other cattle were found on Thurman's premises by the owner thereof, and this fact made known to Ashby, he readily gave permission to enter the premises and recover the cattle, and further readily assented to a search of the premises for other strays, we think it cannot be successfully contended that this evidence was legally sufficient to support the charge in the information; nor do we think that there was any competent evidence to establish any unlawful act committed by defendants, or either of them, to deprive Wade of the immediate possession of his cattle. The evidence adduced at the trial all tended to establish the crime of wrongful branding rather than the charge of larceny of livestock.

We are of the opinion that the people's evidence was wholly insufficient to support the allegations set out in the information; we also are of the opinion that the motion of defendants for a directed verdict of not guilty, made at the conclusion of the people's evidence in chief and renewed at the conclusion of all of the evidence, should have been granted, and that the trial court committed reversible error in overruling the motions; accordingly, the judgment is reversed.

Mr. Justice Jackson and Mr. Justice Hays dissent.

Mr. Justice Stone and Mr. Justice Holland do not participate.